IN THE UNITED STATES DISTRICT COURT FOR THE
SOUTHERN DISTRICT OF GEORGIA
AUGUSTA DIVISION

ROBERT OWEN ARRINGTON,

    Petitioner,

        v.

WARDEN, GDCP,

    Respondent.

CV 117-022

---

**O R D E R**

---

Presently before the Court is Robert Owen Arrington's petition for writ of habeas corpus. (Doc. 1.) Upon review, the Court **DISMISSES WITHOUT PREJUDICE** Claims One, Two, Three, Four, Five, and Seven of Petitioner's petition for failure to plead sufficient facts. It **DISMISSES WITH PREJUDICE** Claim Eight for failure to state a claim cognizable in habeas proceedings. It allows Claim Six to proceed.

## I. Background

In May 2004, a jury in the Superior Court of Richmond County, Georgia, convicted Petitioner of murder. He was sentenced to death. From the time of his conviction until the filing of the current petition, Petitioner has sought relief from various state courts on direct appeal and in habeas actions. Petitioner now petitions this Court for a writ of habeas corpus.

## II. Discussion

Under Habeas Corpus Rule 4, the Court, upon receiving a petition, must "promptly examine it." "If it plainly appears from the petition and any attached exhibits that the petitioner is not entitled to relief in the district court, the judge must dismiss the petition . . . ." Id. If the judge does not dismiss the petition, "the judge must order the respondent to file an answer, motion, or other response within a fixed time, or to take other action the judge may order." Id. Thus, before allowing this case to proceed, the Court must first determine whether the petitioner "is [plainly] not entitled to relief."

The Court concludes that seven of the eight claims in Petitioner's petition do not entitle him to relief. Claims One, Two, Three, Four, Five, and Seven fail to meet the pleading standards of Habeas Corpus Rule 2(c). See Mayle v. Felix, 545 U.S. 644, 655-56 (2005). Claim Eight is not a cognizable claim in habeas proceedings.

The Court first discusses the fact-pleading standards of Rule 2(c). It then explains why Claims One, Two, Three, Four, Five, and Seven do not satisfy the fact-pleading standard. Finally, it explains why Claim Eight cannot be asserted in a habeas proceeding.

## A. Habeas Corpus Rule 2(c)

Under Rule 2(c), "[h]abeas petitions must meet heightened pleading requirements." McFarland v. Scott, 512 U.S. 849, 856

(1994)(citing 28 U.S.C. § 2254 Rule 2(c)). While complaints in a civil case must contain only "a short and plain statement of the claim showing that the pleader is entitled to relief," Fed. R. Civ. P. 8(a), petitions for habeas corpus must "specify all grounds for relief available to the petitioner" and "state the facts supporting each ground." Habeas Corpus Rule 2. In other words, habeas petitions must contain "'fact pleading' as opposed to 'notice pleading.'" Hittson v. GDCP Warden, 759 F.3d 1210, 1265 (11th Cir. 2014)(internal quotation marks and citations omitted).

The model form made available to prisoners seeking to file a petition stresses the fact pleading requirement. The form states, in boldface:

> (9) **CAUTION**: **You must include in this petition all the grounds for relief from the conviction or sentence that you challenge. And you must state the facts that support each ground. If you fail to set forth all the grounds in this petition, you may be barred from presenting additional grounds on a later date.**

Petition for Relief From a Conviction or Sentence by a Person in State Custody, Habeas Corpus Rules, Forms App., 28 U.S.C., (emphasis in original). Any petitioner, even a pro se petitioner, is therefore put on ample notice that facts must be used to support his petition. See Borden v. Allen, 646 F.3d 785, 810 (11th Cir. 2011)( "If, for example, Rule 2(c)(1) and (2) of the § 2254 Rules should cause a petitioner (or his counsel) to doubt what the words 'specify all grounds' and 'state the facts

supporting each ground' mean, the **_CAUTION_** contained in paragraph (9) of the 'Instructions' should remove such doubt.").

The purpose of fact pleading is two-fold. First, unlike civil plaintiffs, "the habeas petitioner ordinarily possesses or has access to, the evidence necessary to establish the facts supporting his collateral claim; he necessarily became aware of them during the course of the criminal prosecution or sometime afterward." Hittson, 759 F.3d at 1265 n.63 (quoting Borden, 646 F.3d at 810). Thus, unlike a civil plaintiff, a habeas petitioner should be able to state the facts supporting his claim with relative precision and without any need for discovery. See Borden, 646 F. 3d at 810 n.31 ("[A] habeas case is not a vehicle for a so-called fishing expedition via discovery, an effort to find evidence to support a claim.").

Second, fact pleading helps the district court to comply with Rule 4's command that it determine whether the petitioner is not entitled to relief. Mayle, 545 U.S. at 656. If a petitioner fails to allege facts, the district court cannot determine if "it plainly appears from the petition . . . that the petitioner is not entitled to relief from the district court." Id. at 656 (quoting Habeas Corpus Rule 4)(internal quotation marks omitted). Thus, "the petition is expected to state facts that point to a 'real possibility of constitutional error.'" Advisory Committee's Notes on Habeas Corpus Rule 4 (citing Aubut v. State of Maine, 431 F.2d 688, 689 (1st Cir. 1970)).

To properly fact plead, "a petitioner must state specific, particularized facts which entitle him or her to habeas corpus relief for each ground specified. These facts must consist of sufficient detail to enable the court to determine, from the face of the petition alone, whether the petition merits further habeas corpus review." Adams v. Armontrout, 897 F.2d 332, 334 (8th Cir. 1990). "Conclusory allegations which are not supported by a statement of specific facts do not warrant habeas relief." James v. Borg, 24 F.3d 20, 26 (9th Cir. 1994).

Because such academic standards are often difficult to decipher, however, the Court examines two pleadings from actual cases — one deficient and one sufficient. The deficient example comes from Hittson v. GDCP. In Hittson, the Eleventh Circuit cited the following ineffective assistance of counsel claims as falling below the fact-pleading standard:

> [S]tate habeas counsel failed to pursue obvious avenues of investigation, resulting in a failure to raise meritorious and potentially meritorious claims. Ineffective Assistance claims which Mr. Hittson believes are "substantial" and which have "some merit" were available to be litigated in state habeas proceedings but post-conviction counsel unreasonable [sic] failed to raise them.
>
> Undersigned counsel represents, upon information and belief, that Mr. Hittson's original habeas attorneys performed no investigation beyond the limited investigation performed by Mr. Hittson's trial attorneys into Mr. Hittson's background. In fact, original habeas counsel appear to have raised only claims which were apparent from a review of the trial transcript, failing to look beyond the record in order to determine whether Mr. Hittson's trial attorneys failed to discover, for instance, available and compelling mitigation evidence. Further, original

habeas counsel failed, absent any reasonable explanation, to bring a claim which was apparent from the record.

Mr. Hittson was Deprived of the Effective Assistance of Counsel Due at Motion For New Trial and Direct Appeal.

Mr. Hittson Was Deprived of the Effective Assistance Of Counsel by His Counsel's Failure to Independently Discover Exculpatory Material Suppressed by the State.

In his motion for new trial proceeding and direct appeal . . . [c]ounsel failed to fully research, raise, brief and support with evidence the meritorious claims that could and should have been raised based on the errors that occurred during Mr. Hittson's capital trial.

759 F.3d at 1264-72. In rejecting these claims, the Eleventh Circuit declared that: "such generalized allegations are insufficient in habeas cases," id. at 1265; "[n]owhere in these generalized claims does Hittson allege any facts that would allow a court to find 'that there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different,'" id. at 1271; and the claims "did not allege[] any facts to support [Petitioner's] allegations that his state habeas counsel were incompetent . . . ." Id. at 1265.

The sufficient example comes from Taylor v. Culliver, No. 4:09-cv-00251-KOB-TMP, 2012 WL 4479151 (N.D. Ala. Sept. 26, 2012). In Taylor, the district court concluded the petitioner "satisfied Rule 2(c)'s threshold requirement." Id. The petition included the following claims:

Ground III: The prosecutor engaged in racial discrimination in jury selection in violation of Batson v. Kentucky, 476 U.S. 79 (1986).

6

Supporting Facts: The prosecutor used his peremptory challenges to strike three of the five available African-American jurors (TR765). In defense of his disproportionate pattern of strikes, the prosecutor offered pretextual reasons. As to Jeremiah Turner, the prosecutor claimed that the venire member stated that he would not go along with the death penalty (TR768). As to Beverly Brewster, the prosecutor claimed that she stated that she was not for the death penalty and stared out the window, appearing "flat out bored" (TR769). These reasons are contradicted by the record (Turner: TR658, 679-680; Brewster: TR240, 250, 259, 280). Moreover, the prosecutor disparately applied his stated concern regarding hesitancy to impose the death penalty to white and African-American venire members (see TR393-394, 398, 413, 465, 562-563, 566-567, 573-574, 580-581, 659-660, 680-683, 769-771). For example, the prosecutor declined to strike a white venire member, whose responses actually indicated greater reluctance to impose the death penalty, and other white venire members whose responses were similar to the challenged African-Americans' (TR398, 413, 562, 566-567, 580-581, 573-574, 680-683).

Ground IV: The trial court's restrictions on voir dire examination of prospective jurors denied Mr. Taylor a fair trial by an impartial jury and a reliable sentencing determination in violation of the Fifth, Sixth, Eighth and Fourteenth Amendments.

Supporting Facts: The trial court failed to conduct individual questioning of prospective jurors. Such questioning was essential in this case, where sixty-three of the seventy-nine potential jurors, eighty percent of the venire members, had heard about the case through the media or discussed it with others in the community (see TR233-759).

Ground VIII: The trial court allowed photographs of the Moores and testimony and comment emphasizing the photographs' gruesome nature in violation of Mr. Taylor's rights to a fair trial and a reliable sentencing determination under the Fifth, Sixth, Eighth and Fourteenth Amendments.

Supporting Facts: During the guilt phase, the trial court allowed the prosecutor to introduce sixty-seven photographs of the Moores, eleven taken at the murder scene and fifty-six during their autopsies (State's Exhibits 6-10, 48-51, 59-65, 73-121). This evidence was wholly irrelevant: There

was no dispute as to the cause of death or nature of the injuries and, before the penalty phase hearing, the defense stipulated to the aggravating circumstance that the crime was especially heinous, atrocious, or cruel.

During the medical examiner's trial testimony, he remarked on the photograph's gruesome nature and described each one in discussing the autopsy procedure, including the external examination, weighing, cleaning, evisceration of the abdomen and chest, cutting and peeling back of the scalp, sawing and removing the skull cap and brain. The jurors examined each photograph (TR985-1005). The prosecutor referred to the photographs as "horrible" (TR798), "gruesome" (TR341, 404, 672), "bloody" (TR404, 672), and "as gory or gross as anything you'll ever see in any horror movie" (TR277), and encouraged the jury to examine them again during its deliberations (TR1112-1113, 1123, 1135-1136).

During the penalty phase, the prosecutor told the jury that he would not exhibit the photographs again: "I've got a hunch that you will probably carry them with you throughout the rest of your life. There's nothing in the world that can ever wipe off or wipe out of your minds the faces and violent deaths of Ernie and Lucille Moore" (TR1350-1351).

Pet. for Habeas Corpus, 4:09-cv-00251-KOB-TMP, Doc. 1.

The differences in the two petitions are obvious. The Taylor petition, unlike the Hittson petition, states each legal claim and lays out a detailed factual basis for it. It uses names, statistics, and testimony to show the court why the petitioner is entitled to relief. It also uses record cites, which, although not obligatory, evidence that the petitioner is pleading fact, not merely opinion. In short, the Taylor petition paints a clear picture that allows the court to make a preliminary judgment about whether "a real possibility of constitutional error" exists.

**B. Petitioner's Petition**

The Court must now determine whether Petitioner's petition is sufficiently well plead to survive the Court's initial Rule 4 review. The Court addresses claims One through Seven to explain why each claim meets or fails to meet the fact pleading standard. It then addresses Claim Eight and explains why it does not entitle Petitioner to relief.

**1. Claim 1**

Petitioner's first claim states that "Petitioner Was Deprived Of His Right To The Effective Assistance Of Counsel At Trial And On Appeal, In Violation Of His Rights Under The Fifth, Sixth, Eighth, And Fourteenth Amendments To The United States Constitution, Strickland v. Washington, 466 U.S. 668 (1984), And Related Precedent." (Doc. 1 at 3.) In support of this claim, Petitioner makes several allegations including:

> Trial counsel failed to conduct an adequate pretrial investigation into the State's case and defenses available to Petitioner at trial, including medical, psychological, psychiatric, and other defenses affecting Petitioner's mental state before, during, and after his participation in the crimes for which he was charged. (Id. ¶ 12(a))

> Counsel failed to locate, interview, and present as witnesses numerous individuals who had compelling mitigating evidence regarding Petitioner, including but not limited to, evidence regarding Petitioner's background, his interactions with the victim on the day of the crime, and his ability to adapt to and contribute to the safety of a prison environment. (Id. ¶ 12(h))

> Counsel failed to adequately object to and litigate the admission of statements and evidence obtained from Petitioner's person and dwelling prior to law enforcement's obtaining Petitioner's consent and prior to law

enforcement's advising Petitioner of his rights under _Miranda v. Arizona_, 384 U.S. 436 (1966). (_Id._ ¶ 12(n))

    Counsel failed to object to the admission of several items of evidence and testimony offered by the State during the trial and permitted the jury to receive and consider evidence that was improper, inadmissible, prejudicial, irrelevant, and/or false; (_Id._ ¶ 12(ff))

These allegations are representative of all the allegations in Claim One. They are also the definition of conclusory and do not meet the fact pleading requirements of Rule 2(c).

    To properly fact plead, petitioners must connect the facts to the law. Advisory Committee's Notes on Subd. (c) of Habeas Corpus Rule 2 ("[I]t is the relationship of the facts to the claims that is important."). To establish ineffective assistance of counsel, a petitioner must show that his counsel's conduct "'fell below an objective standard of reasonableness,'" and that, "'but for counsel's unprofessional errors, the result of the proceeding would have been different.'" _Hittson_, 759 at 1262 (quoting _Strickland_, 466 U.S. at 688, 694). Additionally, courts must give "a strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance," and for a petitioner to overcome that presumption, he must "establish that no competent counsel would have taken the action that his counsel did take." _Id._ at 1263 (internal quotation marks and citations omitted). Petitioner, therefore, must plead specific facts that demonstrate why his counsel's actions fell below the objective standard of reasonableness and why the outcome would

have been different absent the alleged error. He cannot merely allege that counsel should have done things differently. See id. ("With unlimited time and the benefit of hindsight, a petitioner can come up with any number of potentially meritorious ineffective assistance claims that he now wished his collateral counsel had raised.").

Petitioner failed to connect the law with any specific facts. In the examples described above, Petitioner states no facts explaining why his counsel's pretrial investigation was inadequate, what information counsel would have found had they made an adequate investigation, or how that information would have changed the result of the trial. He states no facts detailing who the witnesses were that trial counsel failed to investigate, what mitigating evidence they would have provided, or how that evidence would have affected the trial. And he states no facts showing how counsel failed to adequately object to evidence admitted at trial, what that evidence was, or why his trial counsel should have objected to the admitted evidence. Thus, Petitioner failed to "state specific, particularized facts which entitle [him] habeas corpus relief for each ground specified." Adams, 897 F.2d at 334.

The Court stresses that Petitioner does not have to prove that he is entitled to habeas relief. He must only prove "a real possibility of constitutional error," i.e., that the legal elements of each claim might be met. Petitioner, however, can

only prove a real possibility by using real <u>facts</u>. Unfortunately, Petitioner's first claim has not met this minimum standard. Thus, the Court **DISMISSES** Claim One of his petition.

**2. Claim Two**

Petitioner's second claim alleges that "Misconduct By The Prosecution Team And Other State Agents Deprived Petitioner Of His Constitutional Rights To Due Process And A Fair Trial, In Violation Of The Fifth, Sixth, Eight, And Fourteenth Amendments To The United States Constitution And Related Precedent." (Doc. 1 at 17.) In support of Claim 2, Petitioner makes several allegations, including the following:

> The State suppressed information favorable to the defense at both phases of the trial. The materiality of the suppressed evidence undermines confidence in the outcome of the guilt/innocence and penalty phases of Petitioner's trial and Petitioner's direct appeal, in violation of <u>Brady v. Maryland</u>, 373 U.S. 83, 84-86 (1963), and <u>Kyles v. Whitley</u>, 514 U.S. 419, 432-38 (1995). (<u>Id.</u> ¶ 20)

> The State elicited false and/or misleading testimony from State witnesses at trial, in violation of <u>Napue v. Illinois</u>, 360 U.S. 264, 269 (1959) and in contravention of Petitioner's rights under <u>Mooney v. Holohan</u>, 294 U.S. 103, 112-13 (1935). The State knowingly or negligently presented false testimony in pretrial and trial proceedings, and there is a reasonable likelihood that the false testimony affected the judgment of the trial court and/or the jury at both phases of the trial. <u>See</u> <u>United States v. Agurs</u>, 427 U.S. 97, 103 (1976). The misconduct of the State includes, but is not limited to, mischaracterizing mitigating evidence to the jury, misrepresenting and exaggerating aggravating evidence or lack thereof, making wholly unsupported, impermissible and inflammatory future dangerousness arguments, and failing to produce Mr. Arrington <u>Brady</u> and <u>Giglio</u> evidence regarding the State's witnesses, including James Griffin. (<u>Id.</u> ¶ 24)

During voir dire, the prosecution improperly used its peremptory strikes to systematically exclude jurors on the basis of race and/or gender. See J.E.B. v. Alabama ex. rel. T.B., 511 U.S. 127, 130-31 (1994); Batson v. Kentucky, 476 U.S. 79, 84 (1986). (Id. ¶ 25)

The jury bailiffs and/or sheriff's deputies and/or other court personnel and State agents who interacted with jurors, including the judge, engaged in improper communications with jurors which deprived Petitioner of a fair trial and reliable sentencing. (Id. ¶ 29)

Like Petitioner's allegations in Claim One, however, these allegations are conclusory, and Petitioner has failed to plead specific and particular facts.

Petitioner states no facts detailing the favorable information suppressed by the State; the false testimony elicited by the State; or the false testimony presented by the State. Nor does Petitioner state facts explaining why the materiality of the evidence undermines the outcome of the case; how the prosecution improperly used its peremptory strikes; or what improper communications occurred between court personnel and the jury. Indeed, Petitioner does not even allege which court personnel engaged in the improper communications: "The jury bailiffs and/or sheriff's deputies and/or other court personnel. . . ." (emphasis added). Without these facts, the Petitioner cannot meet the fact-pleading requirements of Rule 2(c). Thus, the Court **DISMISSES** Claim Two.

### 3. Claim Three

Petitioner's third claim states that "Misconduct On The Part Of The Jurors Violated Petitioner's Rights Under The Fifth,

Sixth, Eight, And Fourteenth Amendments To The United States Constitution And Related Precedent." (Doc. 1 at 21.) Petitioner supports his claim with a single paragraph allegation:

> Misconduct on the part of the jurors included, but was not limited to, improper consideration of matters extraneous to the trial, improper racial attitudes which infected the deliberations of the jury, false or misleading responses of jurors on voir dire, improper biases of jurors which infected their deliberations, improper exposure to the prejudicial opinions of third parties, improper communications with third parties, improper communications with jury bailiffs, improper ex parte communications with the trial judge, and improper prejudging of the guilt/innocence and penalty phases of Petitioner's trial. (Id. ¶ 32)

Petitioner's Claim Three, like the claims before it, fails to meet Rule 2(c)'s fact-pleading requirement. Petitioner does allege which jurors committed misconduct, how he came to discover the misconduct, or what the specific details of the misconduct were. Nor does he allege what specific improper biases infected jury deliberations; what false or misleading responses were made on voir dire; or what improper communications occurred between jurors and third parties. These facts, however, are required by Rule 2(c)'s fact-pleading standard. They are also necessary for the Court to determine whether Petitioner's petition is frivolous. Because Petitioner has failed to include any specific or particularized facts, the Court **DISMISSES** Claim Three.

### 4. Claim Four

Petitioner's fourth claim states that "The Trial Court's Improper Rulings And Other Errors Deprived Petitioner Of A Fair

Trial And Reliable Sentencing In Violation Of The Fourth, Fifth, Sixth, Eight, And Fourteenth Amendments To The United States Constitution And Related Precedent." (Doc. 1 at 22.) Petitioner alleges the following errors:

Failing to provide adequate funding and time to allow trial counsel to marshal a defense. (Id. ¶ 35(b))

Failing to strike for cause several venirepersons whose attitudes towards the death penalty would have prevented or substantially impaired their performance as jurors. The trial court erred by phrasing its voir dire questions in a manner which suggested to jurors who gave neutral responses that they were or should be in favor of the death penalty. The court erred in its rulings on motions to challenge prospective jurors for cause based on their attitudes about the death penalty and stated biases, engaged in improper voir dire, and allowed fair and impartial jurors to be struck for cause. (Id. ¶ 35(d))

Allowing the State to introduce illegally and unconstitutionally obtained statements and evidence, which should have been suppressed. (Id. ¶ 35(e))

Failing to allow into the record admissible evidence. (Id. ¶ 35(o))

Failing to possess and employ an accurate and proper understanding of the law, including but not limited to, what constitutes mitigating evidence and what constitutes aggravating evidence; the duties of counsel under Wiggins v. Smith, 539 U.S. 510 (2003); and the defendant's right to solicit and utilize relevant experts' opinions under Ake v. Oklahoma, 470 U.S. 68 (1985). (Id. ¶ 35(y))

Impermissibly injecting argument during the testimony of witnesses and questioning witnesses regarding improper and prejudicial subjects. (Id. ¶ 35(gg))

Petitioner's fourth claim fails to meet the fact-pleading requirements of Rule 2(c). Petitioner states no facts about what funding the Court provided, what funding Petitioner requested, or why the lack of funding created a constitutional violation.

Additionally, Petitioner gives no facts about which jurors the court should have struck for cause, what they said that required them to be struck for cause, or how the judge otherwise engaged in "improper voir dire." Nor does the Petitioner state what admissible evidence should have been admitted, how the judge failed to understand the law, or what argument he impermissibly injected into witness testimony. Such facts are critical to the Court's Rule 4 determination, and their exclusion violates the fact-pleading requirements of Rule 2(c). Thus, the Court **DISMISSES** Claim Four.

### 5. Claim Five

Petitioner's fifth claim states that "Petitioner's Conviction And Sentence Violate The Fifth, Sixth, Eighth, And Fourteenth Amendments To The U.S. Constitution And Analogous Portions Of The Georgia Constitution Because They Rely On Materially Misleading Evidence." (Doc. 1 at 30.) Petitioner's sole allegation in support of this claim states:

> Petitioner's sentence is based on materially inaccurate evidence, including but not limited to, the allegation that Petitioner posed a threat of future danger in prison, which influenced the jury's decision-making in both the guilt/innocence and sentencing phase of Petitioner's trial. The fact that the jury heard such evidence and was urged to consider it in their deliberations is violative of Petitioner's rights under both the Georgia and the U.S. Constitutions because it renders the proceedings against him unreliable. Johnson v. Mississippi, 486 U.S. 578 (1988). Further, the jurors' consideration of inaccurate evidence heightened the risk that the death sentence in this matter was imposed arbitrarily. Id. at 587. Petitioner's conviction and sentence cannot stand in light of such evidence.

(Id. at ¶ 38.)  Once again, however, Petitioner fails to plead specific facts.  Petitioner states that his sentence was based on "materially inaccurate evidence" but makes no mention, other than that he was accused of posing a future danger in prison, of what the inaccurate evidence was, why it was materially false, or how his sentence was based on that evidence.  Such vague and conclusory allegations do not comply with Rule 2(c)'s fact-pleading requirement.  Thus, the Court **DISMISSES** Petitioner's Claim Five.

### 6. Claim Six

Petitioner's sixth claim states that "Petitioner Was Denied Due Process Of Law By The Instructions Given To The Jury At Both Phases Of His Capital Trial, In Violation Of The Fifth, Sixth, Eighth, And Fourteenth Amendments To The United States Constitution And Related Precedent."  (Doc. 1 at 31.)  In support of this claim, Petitioner cites the jury instructions given by the trial judge as well as the case law supporting his claim.  He also makes several other record cites that demonstrate how the instructions could have violated the Constitution.  The Court concludes that this claim pled sufficient facts to survive the Rule 2(c) fact-pleading standard.  Thus, Claim Six may proceed.

### 7. Claim Seven

Petitioner's seventh claim states that "Petitioner's Death Sentence Was Imposed Arbitrarily And Disproportionately And

Amounts To Cruel And Unusual Punishment, Violating His Rights Under The Fifth, Sixth, Eighth And Fourteenth Amendments To The United States Constitution And Related Precedent." (Doc. 1 at 38.) Petitioner offers in support of this claim the following allegations:

> Georgia's statutory death penalty procedures, as applied, do not result in fair, nondiscriminatory, or proportional imposition of the death penalty, and therefore violate the Eighth Amendment to the United States Constitution. (Id. ¶ 44(a))

> The death penalty is imposed arbitrarily, capriciously, and discriminatorily in the State of Georgia, and was so imposed in Petitioner's case. (Id. ¶ 44(b))

> Georgia cases similar to that of Petitioner's with regards to both the nature and circumstances of the offense, prior record, culpability and life and character of the accused, have resulted in lesser punishments than death. (Id. ¶ 44(d))

> Georgia cases more aggravated than that of Petitioner's with regards to both the nature and circumstances of the offense, prior record, culpability, and life and character of the accused, have resulted in lesser punishments than death. (Id. ¶ 44(e))

> There exists in Georgia a pattern and practice of prosecuting authorities, courts, and juries discriminating on the basis of race, gender, and poverty in deciding whether to seek or impose the death penalty in cases similar to that of Petitioner's, thereby making the imposition of the sentence of death against Petitioner a violation of his rights under the Fifth, Sixth, Eighth, and Fourteenth Amendments to the United States Constitution. (Id. ¶ 44(h))

Once again, Petitioner's claim fails to meet the fact-pleading requirements of Rule 2(c). Petitioner makes broad allegations raising serious questions of bias on a statewide level, but Petitioner offers no facts to support his allegations.

The Court needs to know what cases were similar to Petitioner's case, why those cases were similar, and why Petitioner's different outcome shows the Georgia system is arbitrary and capricious. The Court must also know on what factual basis Petitioner alleges that "there exists in Georgia a pattern and practice of . . . discrimination." Petitioner cannot launch such damning allegations without _any_ factual support and expect to have met the fact pleading requirement of Rule 2(c). Thus, the Court **DISMSISSES** Claim Seven.

### 8. Claim Eight

Petitioner's final claim states that "The Execution Of Petitioner By Lethal Injection, And As Implemented By The Georgia Department Of Corrections, Is Cruel And Unusual Punishment In Violation Of His Rights Under The Fifth, Sixth, Eighth, And Fourteenth Amendments To The U.S. Constitution." (Doc. 1 at 45.) Petitioner's claim, however, is not cognizable in a federal habeas proceeding. Habeas cases govern the constitutionality of a prisoner's conviction or sentence. McNabb v. Comm'r Ala. Dept. of Corr., 727 F.3d 1334, 1344 (11th Cir. 2013). They do not govern the circumstances of confinement or imposition of punishment. Id. Because execution procedures go to the conditions of confinement, and not the constitutionality of the conviction, the Eleventh Circuit has instructed that "[a] § 1983 lawsuit, not a habeas proceeding, is the proper way to challenge lethal injection procedures." Id.; see also Tompkins v. Sec'y,

_Dep't. of Corr._, 557 F.3d 1257, 1261 (11th Cir. 2009). Petitioner's claim challenges the lethal injection procedure, not the constitutionality of his conviction. Thus, the Court **DISMISSES** Claim Eight.

### III. Conclusion

"The role of federal habeas proceedings, while important in assuring that constitutional rights are observed, is secondary and limited." _Barefoot v. Estelle_, 463 U.S. 880, 887 (1983). "Federal courts are not forums in which to relitigate state trials," and federal habeas review is _not_ "a means by which a defendant is entitled to delay an execution indefinitely." _Id._ Thus, "[t]he procedures adopted to facilitate the orderly consideration and disposition of habeas petitions are not legal entitlements that a defendant has a right to pursue irrespective of the contribution these procedures make toward uncovering constitution error." _Id._ at 887-88.

An important part of the "procedures adopted to facilitate the orderly consideration and disposition of habeas petitions" is the fact-pleading requirement of Rule 2(c). Fact pleading facilitates the expeditious review of habeas petitions. _See Mayle_, 545 U.S. at 655-56. It ensures that the petitioner will give the court the meat of his argument up front so that the court can quickly separate the wheat from the chaff. _Id._ This, in turn, ensures that the Court can quickly provide either finality to the state court decision or relief to the wronged

petitioner. Thus, when petitioners fail to fact plead, they hinder the Court's ability to efficiently review habeas petitions and diminish its capacity to provide swift relief to those claims which might be meritorious. See McQuiggin v. Perkins, 133 S.Ct. 1924, 1942-43 (2013)(Scalia, J., dissenting)("[F]loods of stale frivolous and repetitious petitions inundate the docket of lower courts and swell our own . . . . It must prejudice the occasional meritorious applicant to be buried in a flood of worthless ones." (internal citations omitted)). Therefore, for the sake of justice, in addition to the commands set forth in the Rules of Habeas Corpus, courts cannot allow to proceed petitions that fail to make a factually specific claim for relief.

The Court concludes that almost all of Petitioner's claims suffer from a deficiency of facts and must be dismissed. Thus, after reviewing the Petitioner's petition in accordance with Rule 4, the Court **DISMISSES WITHOUT PREJUDICE** Claims One, Two, Three, Four, Five, and Seven of Petitioner's petition for failure to meet the fact-pleading requirements of Federal Habeas Rule 2. (Doc. 1.) If Petitioner chooses to refile any of these claims, he is warned that a second failure to follow the fact pleading requirements of Rule 2(c) will result in a dismissal on the merits. Next, the Court **DISMISSES WITH PREJUDICE** Claim Eight because it is not a cognizable claim in habeas proceedings. (Doc. 1.) Finally, the Court requires no action by Respondents

with regard to Claim Six because Respondents have already voluntarily filed an answer in this case.

**ORDER ENTERED** at Augusta, Georgia, this 14th day of September, 2017.

HONORABLE J. RANDAL HALL
UNITED STATES DISTRICT JUDGE
SOUTHERN DISTRICT OF GEORGIA